**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LANCE REYNOLDS,
DENNIS HIGGS,
ROBERT BULLOCK, and
KEVIN JONES,

                Plaintiffs,

vs.                                   Case No. 3:08-cv-388-J-32HTS

CITY OF JACKSONVILLE,

                Defendant.

_____

## <u>ORDER</u>

Plaintiffs brought this action against defendant City of Jacksonville (the "City") seeking compensation for the City's violation of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  Before the Court are the parties' cross-motions for summary judgment (Docs. 30, 31) and respective responses in opposition (Docs. 32, 34). The Court heard oral argument on October 27, 2009, the record of which is incorporated by reference (Doc. 38).

## I.    Background

The City's Fire and Rescue Department ("JFRD") consists of four major divisions: Suppression (also known as Combat), Rescue, Training and Prevention.  During all times material to this case, Plaintiffs were employed as fire investigators in the Prevention Division of JFRD ("Investigators").[1]  Plaintiffs Reynolds, Bullock and Jones were Captains, and

_____

[1]An Investigator's primary job responsibility is to investigate the cause and origin of fires.

plaintiff Higgs a Lieutenant, in the Prevention Division.

Pursuant to Florida law[2], the City collectively bargains with its employees to determine wages, hours, and other terms and conditions of employment. The International Association of Fire Fighters, Local 122 (the "Union") represents JFRD Fire Personnel (including Plaintiffs) in their labor negotiations with the City. Those negotiations are memorialized in a series of collective bargaining agreements ("CBAs"); each CBA contains salary and work schedules which the Union has negotiated on behalf of the Fire Personnel for the time period covered by that CBA.[3]

The CBA identifies three work schedules to which Fire Personnel can be assigned – a 40-hour work week, a 42-hour work week[4], and a 56-hour work week[5]. (Doc. 31-7 at 23). During the collective bargaining process, it was not contemplated that Fire Personnel who were not partially exempt from the overtime provisions of the FLSA would be assigned to the

_____

[2]Section 447.309(1), Fla. Stat.

[3]Three different CBAs cover the relevant time period in this case: one from October 1, 2000 to September 30, 2003, one from October 1, 2003 to September 30, 2005, and one from October 1, 2005 to September 30, 2008. General references to the CBA pertain to all three, as the relevant language addressed herein has not changed from agreement to agreement. Specific citations to sections of the CBA refer to the most recent version (October 1, 2005 to September 30, 2008) (Doc. 31-7).

[4]Commonly known as the "two days on, two days off" schedule, the "42-hour work week" is defined as: "an average of forty-two (42) hours per week during a work period of fourteen days, with the normal work schedule consisting of seven (7) work days of twelve (12) hours each during the period." (Doc. 31-7 at 23).

[5]Commonly known as the "24-hours on, 48-hours off" schedule, the "56–hour work week" is defined as: "an average of fifty-six (56) hours per week during a twenty-seven (27) day work period, with the normal work schedule consisting of twenty-four (24) hours on duty followed by forty-eight (48) hours off duty." (Doc. 31-7 at 23).

56-hour work week schedule.[6]  Despite this, the CBA does not specify which Fire Personnel are to be assigned to which work schedule, and scheduling matters are within the discretion of JFRD management.[7]

The CBA provides a series of salary schedules that set forth what Fire Personnel will be paid based on the work schedule to which they are assigned.  (Doc. 31-7 at 25).  The salary schedules are divided into two columns: one each for 56-hour and 40-hour employees.  Fire Personnel assigned to a 42-hour work week are considered 40-hour employees for purposes of the salary schedules (with their additional two scheduled hours being compensated as overtime).  Fire Personnel who are compensated as 40-hour employees receive a one percent salary premium over those who are 56-hour employees.[8]  All Fire Personnel, regardless of whether they are compensated as 56-hour or 40-hour

---

[6]Adrienne Trott, the City's Chief of Labor Relations (and former Chief of Human Resources), who served as chief negotiator for several of the CBAs between the City and the Union, testified that the 56-hour work week was not intended for Fire Personnel not partially exempted from the overtime requirements of FLSA § 207(a)(1).  (Doc. 31 at 8-9).  See infra n.11 and accompanying text.

[7]Pursuant to Article 11.2 of the CBA, "[a]ll staffing requirements shall be determined by the Director/Fire Chief or his/her designee."  (Doc. 31-7 at 23).  Plaintiffs do not dispute that this provision gives JFRD authorities complete discretion over the work schedule assignments of Fire Personnel, including the Investigators.

[8]By way of example, effective October 1, 2007 a Step 1 Lieutenant with 3 years of experience would earn a monthly salary of $5,118 under the 40-hour salary schedule.  (Doc. 31-7 at 77).  The same employee, under the 56-hour salary schedule, would earn a monthly salary of $5,065.  (Id.)  Despite the pay discrepancy, Ms. Trott testified that "[m]ost people want to work a 56-hour schedule."  (Doc. 31-8 at 93).

employees, are paid on a bi-weekly basis.[9]

In the summer of 2003, Anthony Roseberry was appointed Chief of the Prevention Division. At the time of Chief Roseberry's appointment, Investigators were assigned to the 42-hour work week schedule and were paid overtime at a rate of one and one-half times their regular salary for all hours worked over 40. In August of 2003, Chief Roseberry decided to switch the Investigators from a 42-hour work week to a 56-hour work week. While assigned to the 56-hour work week, the Plaintiffs were each compensated as 56-hour employees pursuant to the CBA. Thus, Plaintiffs were no longer paid overtime for the hours worked above 40 each week; instead, they began to receive time-and-a-half only for hours worked beyond their 56-hour schedule.

In February 2008, Plaintiff Lance Reynolds notified Chief Roseberry and Ms. Trott that he had read a legal decision which appeared to indicate that the Investigators were improperly classified as exempt under the FLSA and thus were not being paid appropriate overtime.[10] Ms. Trott, who was unaware that the Investigators had been working the 56-hour work schedule since 2003, asked Reynolds for time to review the matter. When Ms. Trott

---

[9]Thus, during any given pay period, a 56-hour employee is compensated for working 112 straight time hours, while a 40-hour employee is compensated for working 80 straight time hours. To compute the bi-weekly straight time rate, the City multiplies the monthly salary identified on the relevant salary schedule (taking into account the employees' rank and time in grade and assigned work schedule) by 12, and then divides it by 26. (Doc. 34-1 at ¶ 4).

[10]Lockwood v. Prince George's County, 217 F.3d 839 (table)(4th Cir. June 29, 2000) found that fire investigators with the same job duties as Plaintiffs were not exempt from the overtime provisions of the FLSA. This same issue was later addressed implicitly (in the context of paramedics) by the Eleventh Circuit in Huff v. DeKalb County, Ga., 516 F.3d 1273 (11th Cir. 2008). See n.11, infra.

did not reply within a week, Reynolds filed a formal grievance pursuant to the CBA.  The grievance did not receive a timely response, prompting Reynolds to file this lawsuit in late March 2008.  In September 2008, all of the Investigators, including Plaintiffs, were removed from the 56-hour work week schedule and placed on a 40-hour schedule.

In its initial answer, the City denied that Plaintiffs were not exempt from the FLSA's overtime provisions.  It now admits that Plaintiffs were misclassified as exempt and were not paid proper overtime for certain hours worked above 40, in violation of the FLSA.  The parties have asked to Court to determine the rate of overtime pay due the Plaintiffs and whether the City's violation was willful.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

"In determining whether to grant summary judgment, the Court must view the evidence and inferences drawn from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor." T-Mobile South LLC v. City of Jacksonville , Florida, 564 F.Supp. 2d 1337, 1340 (M.D. Fla. 2008) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir.1988); WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir.1988)).

"The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must

determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." Id.

## III. Discussion

### A. The Fair Labor Standards Act

The FLSA directs that "[e]xcept as otherwise provided..., no employer shall employ any of his employees... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The City concedes that Plaintiffs (i) are not exempt from § 207(a)(1)'s overtime requirements[11] and (ii) worked an excess of 40 hours per week without receiving overtime for hours 41 to 56. It is therefore stipulated that the City violated the FLSA and owes Plaintiffs some measure of overtime compensation.

Plaintiffs contend that the 56-hour salary they were paid only compensated them for a 40-hour work week because the 56-hour work schedule (and thus its corresponding salary)

---

[11]The FLSA exempts from its coverage employees engaged in "fire protection activities." 29 U.S.C. § 207(k). "Section 207(k) is actually a *partial* exemption, since it extends the permissible non-overtime workweek, instead of doing away with it entirely." Huff, 516 F.3d at 1278 n.5 (emphasis in original). To be considered an "employee in fire protection activities," and thus to fall within the § 207(k) partial exemption, 29 U.S.C. § 203(y) requires that an employee meet five criteria : (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality, county, fire district, or State; *and* (5) be engaged either (i) in the prevention, control, and extinguishment of fires, or (ii) in the response to emergency situations where life, property, or the environment is at risk. Id. at 1278 (emphasis added). As a concession that the job duties of Investigators do not meet the § 203(y) criteria (as delineated in Huff), the City explicitly "admits that Plaintiffs are not exempted from the overtime provisions of the. . . FLSA." (Doc. 31 at 7).

was intended only for employees exempted from the overtime provisions of the FLSA. In other words, Plaintiffs contend that they were not compensated whatsoever for hours 41 through 56 as their salary was intended to cover only 40 hours. Plaintiffs thus argue that the City owes them time-and-a-half for all hours over 40 per week, with the hourly rate for the overtime calculation based upon a 40-hour work week.

The City counters that Plaintiffs were appropriately assigned to the 56-hour work week and were compensated for all hours worked pursuant to a corresponding, collectively bargained, salary schedule. As a result, the City argues that Plaintiffs are only due an "overtime premium" (i.e., half-time) for hours 41 through 56, calculated based on a 56-hour work week. Thus, what the parties dispute is how to properly determine the "regular rate" of Plaintiffs' salary so as to be able to calculate the overtime due pursuant to § 207(a)(1); each ask the Court to do so as a matter of law.

### 1. Calculating the "Regular Rate"

"The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed." Aaron v. City of Wichita, 54 F.3d 652, 655 (10th Cir. 1995), *cert. denied*, 516 U.S. 965 (1995) (citing 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 203, *modified*, 331 U.S. 795 (1947)). If the employee is employed solely on the basis of a single hourly rate, the hourly rate is his regular rate. 29 C.F.R. § 778.110. If the employee is employed on a salary basis, however, his regular hourly rate of pay is computed by dividing the salary by the number of hours for which the salary is

intended to compensate. 29 C.F.R. § 778.113.[12]

    a.    *Applicability of 29 C.F.R. § 778.113*

As a threshold matter, Plaintiffs contest the applicability of § 778.113 to this case. First, Plaintiffs argue that they fall beyond the bulletin's scope as they are not compensated "solely on a weekly salary basis" as contemplated by § 778.113(a).[13] Second, Plaintiffs argue that § 778.113 does not apply to employment scenarios in which an employee is expected to work more than 40 hours in a week.

Plaintiffs say that § 778.113 is only applicable to situations "where the employee is paid *solely on a weekly salary basis*," Rodriguez, 518 F.3d at 1269 (emphasis added), and they argue this point in the alternative. On the one hand, Plaintiffs contend that because they receive compensation for all regular and overtime hours worked during each bi-weekly pay period, they are not paid a salary. On the other, Plaintiffs assert that § 778.113 applies only to weekly fixed salaries, and should not be used to determine the regular rate for

_____

[12]Part 778 of Title 29, Code of Federal Regulations, "constitutes the official interpretation of the Department of Labor with respect to" the FLSA's maximum hours and overtime provisions. 29 C.F.R. § 778.1. The Eleventh Circuit has noted that § 778.113 is "an interpretative bulletin, not a regulation. It is therefore not entitled to deference under Chevron, but is instead entitled to the more limited Skidmore type deference." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268, n.5 (11th Cir. 2008)(internal citations omitted); see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). Despite this acknowledgment, the Eleventh Circuit in Rodriguez concluded that § 778.113(a) "provides the correct method for calculating a[ salaried] employee's regular rate of pay." Rodriguez, 518 F.3d at 1268.

[13]The complete first sentence to § 778.113(a) provides that "[i]f the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a).

monthly salaries paid on a bi-weekly basis. Their argument fails on both fronts. First, the leading decisions in this area have found fire personnel working a 56-hour work week and compensated pursuant to a collectively bargained salary schedule to be salaried employees for FLSA purposes, and thus subject to § 778.113. Compare Aaron, 54 F.3d at 654-55 (firefighters on 56-hour work week schedule and paid according to a stipulated, collectively bargained base salary were salaried) and Sharpe v. Cureton, 319 F.3d 259, 271 (6th Cir. 2003) (same) with Commonwealth v. Hasken, 265 S.W.3d 215, 223 (Ky.App. 2007) (distinguishing Sharpe; firefighters were hourly employees because CBA specifically identified them as such). Second, § 778.113(b) specifically provides for the conversion of salaries covering periods longer than a workweek down to their workweek equivalent. Once converted, the resulting weekly wage is then divided by the "hours the employee's pay is intended to compensate" to reach the regular rate used to calculate overtime. In this case, the CBA salary schedules provide monthly salary figures that are easily converted using the method set out in § 778.113(b). Thus, Plaintiffs' situation falls within the reach of § 778.113. See Aaron, 54 F.3d at 655 (utilizing § 778.113 to compute the regular rate for bi-weekly salaried firefighters on a 56-hour work week schedule).

Plaintiffs' next argument is that § 778.113 should not be used to calculate an employee's regular rate when the employee is contemplated to work more than 40 hours in a week. The Tenth Circuit has addressed this question directly in the context of firefighters working a 56-hour work week. See id. In Aaron, the firefighters' bi-weekly salaries were set out in pay schedules contained in a series of collectively bargained Memoranda of Agreement ("MOAs"). To determine the firefighters' regular rate for FLSA purposes, the city

9

divided their bi-weekly salaries by 112 hours (the average number of hours worked in a two-week period), rather than 80 (the firefighters' non-overtime hours). The district court held that the firefighters' overtime hours – i.e., the weekly hours between 41 and 56 – could not be used in calculating the regular rate under § 778.113, but the Tenth Circuit disagreed, finding that such a conclusion was "clearly inconsistent with FLSA regulations. The regulations provide that a base salary used to calculate a regular rate can be intended to cover more than 40 hours in one week and the regulations illustrate how to deal with the calculation of the regular rate in such a case."[14] Id. Guided by the Department of Labor's bulletins and Supreme Court precedent, the Tenth Circuit held that:

> If a designated base salary is intended to cover overtime hours as well as non-overtime hours, it is necessary to divide the salary by the total hours and not just the non-overtime hours because a failure to do so will result in a rate that is not representative of the rate actually paid for the 'normal, non-overtime workweek.'

Id. at 656. Thus, "[i]f the parties intended a salary to cover overtime hours, the regular rate cannot be inflated by subtracting those hours from the number of hours divided into the salary." Id. at 657; see also Singer v. City of Waco, TX, 324 F.3d 813, 824 (5th Cir. 2003)(district court did not err in calculating firefighters' regular rate by dividing work period

---

[14]Specifically, the Tenth Circuit cited to 29 C.F.R. § 778.325, which provides the following illustration:

> If an employee whose maximum hours standard is 40 hours was hired at a fixed salary of $275 for 55 hours of work, he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to his salary, and the statutory overtime pay of $7.50 per hour (time and one-half) for any hours worked in excess of 55.

salary by both overtime and non-overtime hours).  To find differently would be to "confuse[]"

the concepts of overtime *premiums* and overtime *hours*."  <u>Aaron</u>, 54 F.3d at 656 (emphasis

added).

The lesson of <u>Aaron</u> is that it is the intent of the parties that sets the divisor for the

regular rate calculation.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Sharpe</u>, 319 F.3d at 271 ("Importantly, the 'number of

hours which the salary is intended to compensate' does not have to be 40 hours; instead,

this is a number that is determined by the parties' actual practice").  Thus, § 778.113 applies

to employment scenarios which contemplate an employee working more than 40 hours in

a week.[15]  The appropriate question is whether Plaintiffs' 56-hour work week salary was

intended to compensate them for 40 hours or for 56 hours.

---

[15]Plaintiffs contend that the foregoing analysis is incorrect because unlike the firefighters in <u>Aaron</u>, who were eligible for the § 207(k) partial exemption, Plaintiffs were misclassified as exempt.  Plaintiffs cite <u>Desmond v. PNGI Charles Town Gaming, LLC</u>, — F.Supp. 2d ----, 2009 WL 3046962 (N.D.W.Va. Sept. 16, 2009) for the proposition that because they were misclassified, the Court must treat Plaintiffs' salary as earned during only the first 40 hours per workweek unless the employer can satisfy the "fluctuating workweek" method described in 29 C.F.R. § 778.114.  However, courts have found that the fluctuating workweek method is inappropriately applied to firefighters working a 56-hour work schedule, exemption notwithstanding.  <u>See</u> <u>Heder v. City of Two Rivers, WI</u>, 295 F.3d 777, 779-80 (7th Cir. 2002)(stating that "[t]he paradigm of an employee working a 'fluctuating workweek' is one who receives a fixed salary no matter how many hours the work requires that week" and concluding that firefighters on a 56-hour work week schedule did not fit the model because "[e]very extra hour is calculated and paid for.  That is incompatible with treating the base wage as covering any number of hours at straight time").  In addition, at least one court has addressed the exact scenario presented in this case – misclassified fire personnel switched from a 40-hour work week and corresponding salary schedule to a 24-hours on, 24-hours off work week and corresponding salary schedule – and concluded that the legal principles in <u>Aaron</u> applied despite the misclassification.  <u>Schneider v. City of Springfield</u>, 2000 WL 988279 at *7-*9 (S.D. Ohio, March 30, 2000).

b. *Number of Hours Which the Salary is Intended to Compensate*

The number of hours intended to be compensated by a particular salary can be determined by reference to a collectively bargained agreement, see Aaron, 54 F.3d at 655, as well as the parties' actual practices, see Sharpe, 319 F.3d at 271. In Aaron, the Tenth Circuit upheld the city's regular rate calculation because "[t]he contract in question, as well as the actual practices of the parties, clearly indicate[d] that the base salaries in the MOAs were intended to cover a standard 56 hour work week or 112 hours per bi-weekly pay period." Id. at 657. In Schneider, the court reached a similar conclusion, finding that a fire dispatcher's regular rate was properly calculated using a divisor of 53 hours rather than 40 based on "the applicable CBA provisions, Plaintiff['s] own understanding of his compensation and [Aaron]." Schneider, 2000 WL 988279 at *7.

Plaintiffs admit that "[t]he record evidence is clear that it was the intention of the parties (negotiators for the [Union] and the [City] in the collective bargaining process) that the salaries set forth in the pay tables of the CBA are each associated with a particular schedule." (Doc. 30 at 3). Plaintiffs argue, however, that the City cannot establish that the 56-hour salary in the CBA was intended to compensate **them** for 56 hours per week as the City never intended to assign non-exempt employees to a 56-hour work week schedule. They rely on Ms. Trott's testimony to this effect as evidence that the City did not intend for the Plaintiffs' salary to cover 56 hours per week. Plaintiffs further assert that where an employee has been misclassified as exempt, "it is impossible for there to be the requisite intent [under § 778.113], as the issue of the structure of the employee's pay vis-a-vis the overtime laws would never have been a topic of conversation." (Doc. 32 at 8).

The City counters that what the parties intended with regard to Plaintiffs' exemption status is irrelevant, because the "number of hours which the salary is intended to compensate" is clearly demonstrated by the CBA and the actual practice of the parties. The City notes that: (i) the CBA does not prescribe a particular schedule for non-exempt Fire Personnel; (ii) the CBA salary schedules identify employees' base pay regardless of their exemption status; (iii) Plaintiffs understood that the 56-hour work week schedule was one to which they could be assigned; and (iv) Plaintiffs understood that the 56-hour salary schedule set forth the compensation associated with the 56-hour work week. Further, the City argues that nearly five years of performance under this framework without grievance or objection during collective bargaining indicate that both parties intended the 56-hour salary to compensate Plaintiffs for 56 hours of work per week.

Plaintiffs' exemption status is a red herring in the regular rate calculation.[16] Whether the parties intended non-exempt employees to work a 56-hour week is an entirely separate question from whether the parties intended Plaintiffs' salary to compensate them for working 56 hours a week.[17] Further, the parties' intentions with regard to the latter are set forth explicitly in the CBA, to which Plaintiffs concede they were bound to abide. The CBA does not prohibit the assignment of non-exempt employees to a 56-hour work week, nor does it

---

[16]The Court notes that what the parties intended or knew with regard to the Plaintiffs' exemption status *does* have a significant bearing on the question of willfulness. <u>See</u> *infra*, § B.

[17]As Ms. Trott testified, "when you are assigned to a [work] schedule it drives the pay. This is fairly automatic schedule pay, there's no discretion. The exemption is a separate decision." (Doc. 31-8 at 109).

prescribe that such employees be paid under the 40-hour salary schedule – it simply sets forth the work schedule possibilities and then describes how an employee assigned to each schedule will be paid. Plaintiffs were properly assigned to a 56-hour work week schedule and were paid the salary which corresponded to that schedule under the CBA.[18] The City had the authority under the CBA to schedule a non-exempt employee to a 56-hour work week; it was simply required to then pay overtime for all hours over 40, with the employee's regular rate for that purpose calculated by dividing his weekly salary by the hours that salary was intended to compensate. The record is clear that the 56-hour salary was intended to compensate Fire Personnel who worked a 56-hour work schedule.

Plaintiffs argue that the CBA does not definitively answer the question of intent because they never explicitly agreed to work the 56-hour schedule (and thus, never agreed not to be compensated as 40-hour employees). However, the question of whether the Plaintiffs agreed to the schedule change is relevant only if Chief Roseberry did not have the authority to make such a change, which they concede he did. While Plaintiffs may not have overtly approved the move to a 56-hour work week (and its corresponding salary schedule) at the time it was implemented, they agreed through their designated negotiators when the

_____

[18]Although Plaintiffs do not dispute that JFRD authorities could assign them to a 56-hour schedule, they note that the CBA makes a specific reference to the Investigators working the 42-hour schedule, the only such reference to the work schedule of any particular class of Fire Personnel. Specifically, Plaintiffs point to Article 18.8 of the CBA (Doc. 31-7 at 44), which begins: "[w]hen any Prevention Division (Arson Investigation) employee assigned to a forty-two (42) hour work week is required to work on a day that is designated a holiday..." and goes on to describe the appropriate method of calculating holiday pay in such a circumstance. Despite its specific reference to Investigators, Article 18.8 contains purely permissive language that by no means indicates that a 42-hour schedule is prescribed for them by the CBA.

CBA was bargained to permit themselves to be assigned to any schedule, and to be paid pursuant to the schedule to which they were assigned. In addition, Plaintiffs did not make any effort during the most recent round of collective bargaining – which occurred subsequent to the Investigators' move to the 56-hour work week – to reverse the schedule and salary change. In fact, none of the Plaintiffs filed a grievance or any other complaint regarding the schedule change until Reynolds' phone call to Ms. Trott in February 2008.

Plaintiffs also note that the schedule change caused their hours to increase while both their base pay and hourly rate actually decreased, and that "[t]here is simply no record evidence that any party to the collective bargaining agreement agreed to a decrease in Plaintiffs' pay." (Doc. 32 at 9). They claim that their reassignment from a 42 to a 56-hour work week was a *de facto* unilateral salary change, and thus an unlawful employment action under Chapter 447, Florida Statutes. However, it is undisputed that Plaintiffs were moved from one negotiated schedule to another, then paid the negotiated salary associated with the new schedule. If Plaintiffs felt that the schedule change effected an unlawful salary reduction, they could have requested that the union intervene to "impact bargain" the change.[19] Instead, Plaintiffs accepted their new pay and never sought to grieve the schedule

---

[19]The Union had six months from the time of the alleged unfair labor practice to initiate a proceeding to remedy that practice, § 447.503(6)(b), Fla. Stat., and failed to do so. As Ms. Trott testified, "[i]f the union felt that there was an impact by virtue of such a change, the obligation is on the union to raise that at the time the change is made and to identify what the impact is and to initiate [or] request negotiations over it. None of that happened." (Doc. 31-8 at 100).

change on these or any other grounds.[20]

Even though the schedule change caused Plaintiffs to receive a lower salary and hourly rate, the FLSA is not necessarily implicated. The Court finds the Schneider case instructive on this point. The fire dispatchers in Schneider were reassigned from a 40-hour work week to a 53-hour "tour of duty," which consisted of a 24-hour on, 48-off work schedule very similar to the 56-hour work week in this case. Schneider, 2000 WL 988279 at *9. Because the salaries were identical for 40-hour and 53-hour "tour" employees, the dispatchers argued that their reassignment had resulted in their receiving a lower hourly rate, and thus a lower regular rate, which impacted the calculation of their overtime. The court found the argument unpersuasive, and stated:

> [T]he Plaintiffs' hourly rate of compensation "hinged upon" whether they worked 24-hour "tours of duty" or whether they worked the more traditional, eight-hour work days. The parties admit that the Plaintiffs were "tour" employees, and that their union voluntarily entered into a CBA which expressly provided for "tour of duty" workers to be compensated at a lower hourly wage than employees who worked a more traditional, eight-hour schedule. *The Court finds nothing (and the Plaintiffs cite nothing) in the FLSA which prohibits an employer from paying its employees different hourly rates based on the shift that they work.*

Id. (emphasis added).

It is a matter of simple arithmetic that a salary intended to cover 56 hours will result in a lower hourly rate than a scenario in which the same salary, plus a one percent premium,

---

[20]Ms. Trott, when asked whether she believed that changing an employee's schedule so that he worked more hours but was paid less would implicate impact bargaining, replied: "No. No... we've negotiated the variety of schedules here and it's clear that employees can be assigned to any one of those schedules. You don't impact bargain over moving an employee, an individual employee or a group of employees, from one negotiated schedule to another negotiated schedule." (Doc. 31-8 at 99-100).

is intended to cover 40 hours. That Plaintiffs received a lower hourly rate and a lower salary for working more hours does not mean that the parties did not intend for the specified salary to cover the specified number of hours, especially where Plaintiffs understood that their compensation while working a 56-hour work week was derived from the 56-hour salary schedule. "The Plaintiffs cannot be heard to complain about working more hours for a lower hourly rate when they, through their union, expressly entered into such an agreement with the City." Id. at *9, n.17.[21]

Based on the CBA, the actions of the parties, Plaintiffs' understanding of their compensation, and relevant case law, the Court concludes that Plaintiffs' salary was intended to compensate them for 56 hours per week.[22] For its violation of the overtime provisions of the FLSA, the City is liable to Plaintiffs for an overtime premium (i.e., one-half

---

[21]The City has advanced different rationales for the salary discrepancy between 40-hour and 56-hour employees, which include the desirability of the 56-hour schedule (24 hours on, 48 hours off) and the goal of incentivizing Fire Personnel to work a 40-hour schedule. Whatever its purpose, the pay discrepancy itself is immaterial, as the parties collectively bargained for it over the course of several CBAs.

[22]In any given week, Plaintiffs may or may not have actually worked 56 hours. Due to the inherent nature of the 56-hour work week, Plaintiffs actually worked an _average_ of 56 hours per week, and were credited for 112 straight-time hours over each pay period (with the bi-weekly pay rate calculated as described _supra_, n. 9). Because the CBA identifies the work schedule on a weekly basis and overtime is calculated in the same manner, the Court addresses the question of intended hours within the framework of a week, rather than a two week period (as the Tenth Circuit did in Aaron). This mirrors the treatment of the Southern District of Ohio in Schneider. See Schneider, 2000 WL 988279 at *1 (court based regular rate calculation on 53 hours per week where fire dispatchers "worked an average of 53 hours per week and received overtime compensation for any hours worked in excess of 144 hours during a 19-day period").

the regular rate) for all weekly hours worked between 41 and 56,[23] with the regular rate calculated by dividing Plaintiffs' respective weekly salaries (taking into account their rank and time in grade) by 56 hours.[24]

### B.    Willful Violation

An action commenced under the FLSA has a two-year statute of limitations, unless the action "aris[es] out of a willful violation" by the employer, in which case another year is added to the claim.  29 U.S.C. § 255(a).  "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was."  Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162-63 (11th Cir. 2008)(citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  The Code of Federal Regulations defines reckless disregard as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

Plaintiffs ask the Court to find the City's violation of the FLSA willful as a matter of law based on the facts in the record.  The City argues that the issue of wilfulness should be

---

[23]Plaintiffs were paid overtime at a rate of time-and-a-half for hours worked above 56 in a given week.  The record is silent as to the rate at which those hours were compensated. The Court therefore makes no pronouncement on the City's obligations with regard to those additional hours.

[24]29 C.F.R. § 778.113(b) provides the formula for converting a monthly salary to its workweek equivalent.  At oral argument, the parties agreed that, once the Court ruled on the methodology to be used, they would attempt to reach agreement on the number of hours and the amount of overtime compensation the City owes to Plaintiffs for the relevant period.

determined by the finder of fact.  While there is no definitive guidance on the subject, the Eleventh Circuit has implied that willfulness may be properly decided by a jury where genuine issues of fact exist.[25]

In this case, the question of willfulness turns on what Chief Roseberry or other City officials knew or should have known regarding FLSA liability at the time of the schedule change, or knew or should have known of any such potential at any point thereafter. Plaintiffs contend that Chief Roseberry was well aware that the schedule change had FLSA implications.  In support, Plaintiffs present deposition testimony that Chief Roseberry's motive was to reduce the City's overtime obligations by eliminating the two overtime hours built into the Investigators' 42-hour work week.  While Plaintiffs do not specifically assert that Chief Roseberry knew or had reason to know that they were not exempt, they do contend that moving the Investigators to a 56-hour schedule was "an attempt to illegally reduce [the City's] overtime obligations." (Doc. 32 at 10).  They also argue that neither Chief Roseberry nor the City made any attempt to investigate the potential FLSA implications of the schedule change, and that the City merely "rubber-stamped" the necessary documents to facilitate the change without adequate inquiry by either its Human Resources or Legal Departments.

The City concedes that Chief Roseberry sought to avoid the two built-in hours of overtime in the Investigators' 42-hour schedule, but argues that he did not do so in willful

_____

[25]The Court stated: "We have been unable to find an FLSA decision of this Court squarely holding that the decision about whether the employer acted willfully for purposes of determining the statute of limitations period is to be decided by the jury. In the district court, the court and the parties assumed that the jury was to decide willfulness, and the parties have assumed that in their briefs and arguments to us. So, we assume it too."  Alvarez Perez, 515 F.3d at 1163, n.3.

violation of the FLSA. Noting that Chief Roseberry once worked 56-hour weeks as an Investigator during a time that Investigators were considered exempt, the City contends that he had no knowledge that circumstances were different when he ordered the schedule change.[26] In addition, Chief Roseberry testified that his primary motive behind the change was increased efficiency and continuity in the Investigator position as opposed to any plan to avoid the FLSA's overtime requirements.[27] The City also disputes Plaintiffs' contention that the City's alleged "rubber-stamping" of their human resources documents evidences any intent to avoid – or reckless disregard for – its FLSA obligations.

Whether the City through its agents either knew that its conduct was prohibited by the FLSA or showed reckless disregard about that possibility presents a genuine issue of material fact which must be decided by the fact finder.

### 3.    Liquidated Damages

Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions

---

[26]It is also not clear that Plaintiffs' exemption status was settled law at the time of the schedule change. The <u>Huff</u> case, which tangentially addressed this question, was not decided by the Eleventh Circuit until February 2008, the same month Reynolds brought his concerns to Ms. Trott.

[27]When asked why he changed the Investigators' schedules, Chief Roseberry stated: "I did it for just efficiency and continuity... I was an Investigator at one point on the 42-hour work week... I hated the schedule. From my own personal experience, I couldn't tell whether I was coming or going. The other problem with that schedule was when a guy took off or got sick you had to find another individual to cover that shift... When I put the investigators back on a 56-hour work week I put two on duty... It was purely for continuity and efficiency." (Doc. 31-2 at 20-21). In addition, when asked whether one of the reasons the Plaintiffs were moved to a 56-hour work week was to reduce overtime and save money, Chief Roseberry replied: "No. When I made that move, that may have been a benefit, but that is not why I did it." (Id. at 66).

of [§ 207]... shall be liable to the employee or employees affected in the amount of their... unpaid overtime compensation... *and in an additional equal amount as liquidated damages.*" 29 U.S.C. § 216(b)(emphasis added).  Given this mandatory language, "a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages" under the FLSA.  Rodriguez, 518 F.3d at 1272.  However, the Portal to Portal Act, 29 U.S.C. §§ 251-62, which amended the FLSA, provides a safe harbor for an employer in certain circumstances:

> In any action ... to recover ... unpaid overtime compensation, or liquidated damages, under the [FLSA] ..., if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation ... the court may, in its sound discretion, award no liquidated damages ....

29 U.S.C. § 260.  An employer who violates the FLSA's overtime provision bears the burden of proving its entitlement to the safe harbor.  Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir.1987).

In Alvarez Perez, the Eleventh Circuit addressed the question of whether a jury's finding that an employer's FLSA violation was willful (for the purpose of extending the statute of limitations) would preclude the judge from finding that the employer acted in good faith (for the purpose of avoiding liquidated damages).  Alvarez Perez, 515 F.3d at 1164.  The Court concluded that "in an FLSA case a jury's finding in deciding the limitations period question that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question."  Id. at 1166.  As such, the Court cannot properly address the question of liquidated damages until the jury

determines the willfulness issue.

Accordingly, it is hereby

**ORDERED**:

1.     Plaintiff's Motion for Partial Summary Judgment (Doc. 30) is **DENIED**.

2.     Defendant's Motion for Partial Summary Judgment (Doc. 31) is **GRANTED** to the extent stated herein.

3.     Based on the Court's ruling, the parties are directed to try to resolve the case. The parties must file a joint report no later than **February 15, 2010** regarding the status of their efforts.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of December, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

jmm.
Copies:
counsel of record